NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BUSCH, ) | No. C 06-06271 JF (PR) |
|         Petitioner, ) | |
| vs. ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| A.P. KANE, Warden, ) | |
|        Respondent. ) | (Docket No. 15) |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision of the Board of Prison Terms (the 'Board") to deny him parole. The Court found that the petition stated three cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Petitioner's motion to file citation of supplemental authorities (Docket No. 15) is GRANTED. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

///

## BACKGROUND

In 1989, a San Diego Superior Court jury convicted Petitioner of second degree murder (Cal. Penal Code § 187). Petitioner was sentenced to a term of fifteen years-to-life in state prison. Petitioner challenges the Board's decision denying him parole after a third parole consideration hearing. Petitioner filed state habeas petitions in the state superior court, state appellate court and state supreme court, all the last of which was denied on August 23, 2006. Petitioner filed the instant federal habeas action on October 4, 2006.

## DISCUSSION

### A. Standard of Review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court

1  concludes in its independent judgment that the relevant state-court decision applied
2  clearly established federal law erroneously or incorrectly.  Rather, that application must
3  also be unreasonable." Id. at 411.
4      "[A] federal habeas court making the 'unreasonable application' inquiry should
5  ask whether the state court's application of clearly established federal law was
6  'objectively unreasonable.'" Id. at 409.  In examining whether the state court decision
7  was objectively unreasonable, the inquiry may require analysis of the state court's method
8  as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The
9  standard for "objectively unreasonable" is not "clear error" because "[t]hese two
10 standards . . . are not the same.  The gloss of error fails to give proper deference to state
11 courts by conflating error (even clear error) with unreasonableness." Lockyer v.
12 Andrade, 538 U.S. 63, 75 (2003).
13     A federal habeas court may grant the writ if it concludes that the state court's
14 adjudication of the claim "results in a decision that was based on an unreasonable
15 determination of the facts in light of the evidence presented in the State court
16 proceeding." 28. U.S.C. § 2254(d)(2).  The court must presume correct any determination
17 of a factual issue made by a state court unless the petitioner rebuts the presumption of
18 correctness by clear and convincing evidence.  28. U.S.C. § 2254(e)(1).
19     Where, as here, the highest state court to consider the Petitioner's claims issued a
20 summary opinion which does not explain the rationale of its decision, federal review
21 under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v.
22 Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-
23 78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of
24 Petitioner's claims is the opinion of the California Court of Appeal.  (Resp. Ex. 15 (In re
25 Timothy Busch on Habeas Corpus, Case No. D048512, June 9, 2006).)
26 ///
27 ///
28 ///

B. **Legal Claims and Analysis**

As grounds for federal habeas relief, Petitioner alleges: (1) his liberty interest and right to due process were violated when parole was denied without the requisite reliable evidence; (2) the Board and the Governor have an illegal anti-parole policy that violate his liberty interest and right to due process; and (3) his liberty interest and due process were violated when the Board did not comply with the law. See Petition at 6-6a.

**1.   Due process and liberty interest**

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13, 2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[1]

Recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir.), reh'g en banc granted, 527 F.3d 797 (9th. Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in Hayward. Since the en banc hearing on June 24, 2008, the Ninth Circuit has ordered briefing on the questions, inter alia, whether the order granting rehearing en banc should be vacated and

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit. 15, § 2402(d).

submission of the matter deferred, pending the California Supreme Court's decisions in In re Lawrence, No. S154018, and In re Shaputis, No. S155872, both of which cases were argued on June 4, 2008.  Hayward v. Marshall, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it is the law in this circuit that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, which is satisfied if some evidence supports the Board's parole suitability decision.  Sass, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole.  Id. at 1129.  Biggs and Irons further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence.  See Irons, 505 F.3d at 853-54.

The Board's decision denying parole in this case was based upon its review of the nature and circumstances of the commitment offense, Petitioner's prior criminal and social history, and behavior and programming during imprisonment.  The Board concluded that Petitioner "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Resp. Ex. 3 at 67.)  The Board observed that the commitment offense was carried out "in an especially cruel and callous manner," (id.), which "demonstrates an exceptionally [sic] disregard for human suffering," (id. at 68).  Petitioner's victim was a two year old girl who was under his care while her mother, Petitioner's girlfriend, was at work.  (Id.)  The autopsy revealed that the victim "died from subdural bleeding into her inner cranial cavity" and that she had "two skull fractures and a number of fresh bruises on her body and chin." (Id. at 9.)  In the coroner's opinion, the head injuries were caused by either being bludgeoned with a hard object or having her

head swung forcefully into a hard, stationary object.  (Id. at 68.)

Additionally, the Board found Petitioner's most recent psychological report inconclusive, quoting the psychologist's assessment of Petitioner's dangerousness: "However, [Petitioner] denies a past history of violence, which would suggest he may not be connected with those factors that might put him at risk of behaving in a violent manner."  (Id. at 70; Resp't Ex. 10 at 6.)  The Board also found significant Petitioner's prior psychological evaluation, wherein the psychiatrist had the "impression that there is a marked irritability just below the surface of this man."  (Id. at 74; Resp't Ex. 11 at 6.) Petitioner's "lack of insight of general remorse coupled with the less than favorable psych reports" were the basis of the Board's finding that Petitioner was unsuitable for parole. (Id. at 74.)  The Board recognized several factors tending to show suitability, such as the fact that Petitioner had a "pretty solid parole package," good job performances, extensive educational upgrading, and good participation in self-help and disciplinary programs.  Id. at 71-72.  However, the Board concluded that the "these positive aspects of [Petitioner's] behavior does [sic] not outweigh the factors of unsuitability."  Id.

In its order denying habeas relief, the California Court of Appeal determined that the record contained some evidence to support the Board's finding that Petitioner is unsuitable for parole.  The court made the following observations:

> Here, the Board properly considered [Petitioner's] underlying commitment offense, finding it was carried out in an especially cruel and callous manner. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).)  The record before the Board showed that two-year-old Shaena, while in [Petitioner's] exclusive care, sustained two separate skull fractures and a subdural hematoma.  At trial, the coroner testified the injuries could have occurred accidentally only if Shaena had fallen 20 feet.  In the coroner's opinion, Shaena was bludgeoned with a hard object or was swung forcefully into a hard, stationary object.  Although [Petitioner] claimed Shaena was sick when he took over her care, the jury found Shaena's injuries were not accidental and [Petitioner] was responsible for her death.  Some evidence supports the Board's finding the offense was committed in a manner shown an exceptionally callous disregard for human suffering.  (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B) & (D).)
>
> The Board considered other applicable factors regarding suitability for parole as specified by statute and regulation and did not base its finding of parole unsuitability on [Petitioner's] failure to admit guilt.  The Board noted [Petitioner] had no prior criminal record, his institutional behavior was

>outstanding and he had realistic parole plans. According to a psychiatric assessment of dangerousness, [Petitioner] was a low risk for violence in the community *only if* he had no involvement in Shaena's death, a fact belied by the jury's verdict. The Board found the positive aspects of [Petitioner's] behavior in prison did not outweigh the factors of parole unsuitability. There is some evidence in the record to support the Board's finding [Petitioner] is not presently suitable for parole.

(Resp. Ex. 15 at 2.)

As noted by the state appellate court, the Board denied Petitioner parole not solely because of the nature and circumstances of Petitioner's commitment offense but also because of Petitioner's lack of remorse and acknowledgment of his role therein. The Board properly considered the nature of Petitioner's commitment offense in its decision to deny parole. See In re Rosenkrantz, 29 Cal. 4th 616, 682-83 ("the [Board] properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant"). Beyond the commitment offense, the Board found other evidence that Petitioner remained an "unreasonable risk of danger to society if released from prison." Cal. Code of Reg., tit. 15, § 2402(a); see supra at 7. Accordingly, it appears that the Board's findings are supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Biggs v. Terhune, 334 F.3d 910, 915 (9th. Cir. 2003) (citing McQuillion, 306 F.3d at 904).

This Court concludes that Petitioner's right to due process and liberty interest were not violated by the Board's decision to deny parole. The state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

**2.    Anti-parole policy**

Petitioner's second claim is that the Board and the Governor have an illegal anti-parole policy that violated due process. Put another way, Petitioner is claiming that the Board is systematically biased.

Respondent contends that Petitioner bears the burden of demonstrating the truth of his allegations in a habeas corpus proceeding. (Resp't at 15.) Respondent maintains that

Petitioner's allegation that the Board has an anti- or no-parole policy is "insufficient to establish that the alleged bias existing before his hearing was the basis for the Board's parole denial, rather than the Board's consideration of the evidence weighing against parole suitability." (Id. at 16.)

A prisoner is entitled to have his release date considered by a parole board that is free from bias or prejudice. O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (citing Schweiker v. McClure, 456 U.S. 188, 195 (1982); Morrissey v. Brewer, 408 U.S. 471, 489 (1972); and Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)). However, Petitioner has failed to present any evidence in support of his assertions, including a showing of bias by any of the individual commissioners on the Board. Without such evidence, Petitioner's claim that the Board has a no-parole policy is conclusory. Finally, Petitioner and his counsel declined to object to the panel at the hearing. (Resp't Ex. 3 at 6.) Accordingly, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

### 3. **Compliance with law**

As discussed above, this Court concludes that Petitioner's right to due process was not violated by the Board's finding that Petitioner was not suitable for parole. See *supra* at 7. It cannot be said that the Board failed to comply with the law when its decision was supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Biggs, 334 F.3d at 915. Accordingly, the state courts' denial of Petitioner's third claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

///

///

///

# CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.

This order terminates Docket No. 15.

IT IS SO ORDERED.

Dated:  12/5/08

JEREMY FOGEL
United States District Judge